HILL et al. v. FIRST STATE BANK OF OAKWOOD. (No. 620.)

(Court of Civil Appeals of Texas. El Paso. Nov. 9, 1916. Rehearing Denied Dec. 7, 1916.)

1. PARTNERSHIP ☞127—LIABILITIES AS TO THIRD PERSONS—TRADING PARTNERSHIP.

Where a partnership agreement provided that each of three partners should share profits and losses alike, in a business of buying timber and the manufacture and sale of ties therefrom, and the parties actually carried on a business of securing timber and making ties in mills owned or controlled by them, and sale of such ties, the firm, both in its formation and management, was a trading partnership, although the agreement contained a provision that no one of the partners should create a debt or obligation against the firm except with the written consent of all parties.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 192; Dec. Dig. ☞127.]

2. PARTNERSHIP ☞216(3)—ACTIONS AGAINST FIRM—PLEADING—VARIANCE.

Although a partnership note bore a different firm name from that found in the partnership contract proven, there was no variance between allegation and proof, where the managing partner testified that the original name had been changed to that alleged before the execution of the note.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 418; Dec. Dig. ☞216(3).]

3. PARTNERSHIP ☞146(2)—AUTHORITY OF PARTNER—EXECUTION OF NOTE.

Where a managing partner was requested by other partners to secure funds from any bank or individual, and had express consent to "act unrestricted" in all matters pertaining to the interests of the company, he had sufficient authority to execute a note, so that a ratification of such note by the firm was not necessary.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 248; Dec. Dig. ☞146(2).]

4. EVIDENCE ☞373(4)—DOCUMENTARY EVIDENCE—NOTE.

Where the undisputed evidence of a managing partner showed that he had express authority to execute the note sued upon, there was no error in admitting the note as evidence, although the defendants had denied its execution.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1586; Dec. Dig. ☞373(4).]

Error from District Court, Anderson County; John S. Prince, Judge.

Suit by the First State Bank of Oakwood against Joe L. Hill and others. Judgment

for plaintiff, and defendants bring error. Affirmed.

Gordon Bullitt, of San Antonio, for plaintiffs in error. N. B. Morris, of Palestine, for defendant in error.

WALTHALL, J. This suit was brought by defendant in error against Joe L. Hill, J. M. Dobie, and Wm. A. Frisby, to recover upon a promissory note in the sum of $708.62, interest and attorney's fees, executed by Wm. A. Frisby to the bank for and on account of the San Antonio Lumber & Tie Company, and alleging that plaintiffs in error were partners engaged in the sawmill, lumber, and tie business, and doing business as such under the firm name of San Antonio Lumber & Tie Company with Wm. A. Frisby acting for the firm as general manager, and that, acting as such, and within the scope of his authority, and for the use and benefit of said firm, executed and delivered to said bank the promissory note sued on.

Hill and Dobie answered by general demurrer and special exceptions, denied some allegations in the petition, and admitted others, denied that they were at any time members of the alleged partnership, and alleged: That the only business relation existing between defendants was by virtue of a written agreement in which they and their codefendant, Frisby, entered into a nontrading and noncommercial partnership, to sell hardwood, lumber, and cross-ties under the firm name of San Antonio Tie Company. That among other provisions, the partnership agreement provides:

"The business shall be conducted in the name of San Antonio Tie Company, and neither party shall create a debt or obligation against said firm except by a written consent of all parties."

That said provision in said partnership agreement was known to the bank at the time of the making of said note. That the note was made by Frisby without the knowledge or consent of defendants Hill and Dobie, and that Frisby was therefore acting beyond the scope of his authority in executing the note.

The bank, by supplemental pleading, denied the facts stated in the answer; alleged that at the time of making said note, the partnership business was known to the bank as alleged by it, and that defendants did business with it by that name; but that if its firm name was in fact the San Antonio Tie Company, the bank had no knowledge of the difference in name, and that the same persons composed the San Antonio Tie Company as partners, and are one and the same concern and identical in membership, and that said note was executed for their benefit; that if Frisby did not have authority from Hill and Dobie to execute the note, after the note had been executed for the benefit of said three members, with full knowledge that same had been executed, they each jointly and severally ratified and acquiesced in and approved the act of Frisby in making the note, and got the benefit of the proceeds realized upon said note. The case was tried without a jury. Judgment was rendered in favor of the bank.

[1] In the first assignment, it is claimed that the evidence shows that the partners were engaged in a nontrading and noncommercial partnership, and that it was error to render judgment against plaintiffs in error, because: First, it was not shown that Frisby had authority from Hill and Dobie to make the note; second, it was not alleged or shown that it was the usage or custom of the partnership to permit Frisby to borrow money or make notes in the name of or for the partnership. The part of the contract disclosing the purpose for which the partnership was formed recites:

"Whereas, Joe L. Hill has the assurance of securing a contract, to furnish ties for the building of the A. S. R. & M. R. R., and whereas, it is desired by him to secure the assistance of J. M. Dobie and W. A. Frisby, the said Dobie agrees to render such financial aid as may be required to carry out the contract aforesaid. He further agrees to make the necessary bond in order to secure the contract with said railroad company; and whereas, the said Hill and Frisby have already made contracts for timber to manufacture said ties, the said Frisby agrees to give all of his time and energies necessary and to superintend and see to the management. to the making and shipping of said ties, and agrees to keep all necessary records and books showing number of ties made and delivered, so that at all times any of the parties may know how many have been shipped, their cost and how many are on hand and to make invoices and bills of lading covering car shipments, so that at any time any of the parties may know the number of ties shipped and the amount paid therefor and amount due for said ties, and he further agrees that as soon as ties are shipped to send bills of lading and invoices to the State Bank & Trust Company at San Antonio, Texas, to be placed to the credit of the contracting parties in the name of the San Antonio Tie Company, said moneys to be used only to pay necessary expenses of the tie business, including the expense already incurred by the said Frisby and Hill in securing timber lands, etc., and whenever any expense is incurred vouchers are to be issued for each item thereof, i. e., the purpose of each check shall be explained. The said J. M. Dobie agrees to furnish the money or credit which may be necessary to properly conduct the said business, said amount not to exceed at any one time, prior to the commencement of the tie shipments as above stipulated, the sum of $1,000.00, said money or credit to be furnished where the same shall be required by the said Joe L. Hill to pay the necessary expense in securing timber for the making of said ties, and such other expenses as may be necessary to enable the said Hill to carry out the contract with said railway company."

The contract then provides that each of said parties shall bear one-third of the losses and share alike in the net profits, the business to be conducted in the name of San Antonio Tie Company, and that neither party shall create a debt or obligation against said firm except with the written consent of all parties.

Frisby testified:

"The note attached to plaintiff's petition and just introduced in evidence was executed and delivered to the plaintiff by me. I executed the note because it was necessary to obtain the money to carry on the business, and because at that time the company was unable to secure further credit and assistance from the bank it did business with in San Antonio, Tex., as represented to me by said Joe L. Hill. He suggested I should secure funds from any bank or individual that I could make the arrangements with. I got the full face value of the note, and used the money in operating the mill and paying off the men who were working for the company. * * * I was the general manager for said company. I was authorized as the general manager for said company and as a member of said firm, and also by the express consent given me by the other members, to act unrestricted in all matters pertaining to the interest of said company."

Frisby testified to a change in the name of the firm to San Antonio Lumber & Tie Company; the change was made before the note sued on was made; did not remember to have shown the contract of partnership to the bank before he got the money, or tell the bank about the contract. He transacted all the business connected with the mills, the buying and selling, at the time of making the note. He further said:

"When I made that note it was placed to the credit either of myself or the company, I don't know which. I paid debts out of it, labor and material and things of that kind that were used at the different mills. The San Antonio Lumber & Tie Company owned the mills. * * * The San Antonio Tie Company was engaged in the manufacture and sale of ties. They manufactured their ties from steam sawmills. The San Antonio Lumber & Tie Company was engaged in the same business, but changed the name for the purpose of handling the lumber. It was engaged in the manufacture and sale of lumber and ties."

The note, the partnership contract, and the evidence given by Frisby constituted all of the evidence offered. It is quite clear that the partnership, both in its formation and in its management, was a trading partnership. The Supreme Court of this state, in Randall v. Merideth, 76 Tex. 669, 13 S. W. 576, quoted with approval the definition of a trading partnership, given in Kimbro v. Bullitt, 22 How. 268, 16 L. Ed. 313, where it is said:

"Wherever the business, according to the usual mode of conducting it, imports, in its nature, the necessity of buying and selling, the firm is then properly regarded as a trading partnership, and is invested with all the powers, and subject to all the obligations, incident to that relation."

The Supreme Court, in the same case, for a fuller definition, quotes from Bates' Partnership, § 327, the following:

"If the partnership contemplates the periodical or continuous or frequent purchasing, not as incident to an occupation, but for the purpose of selling again the thing purchased, either in its original or manufactured state, it is a trading partnership; otherwise, it is not."

The partnership contract and the evidence in this case show that the business contemplated by Hill, Dobie, and Frisby, and that as actually conducted by them, was to secure timber for making ties, to make ties of the timber in mills owned or controlled by them, and to sell the ties, in the prosecution of their business. But aside from the question of the nature of their partnership, the uncontradicted evidence of Frisby discloses that he was given "express consent by the other members" of the partnership "to act unrestricted in all matters pertaining to the interest of the partnership." At the suggestion of Hill, he made the note sued on in behalf of the partnership, secured the proceeds, and made use of it in paying for labor and material used by the partnership. The assignment is overruled.

The second and third assignments are without merit, and are overruled.

The fourth ground of error is based on the assumption that the partnership was a nontrading concern, and what we have said in disposing of the first ground necessarily applies to the fourth.

[2] The evidence of Frisby shows that before making the note, the style of the firm had been changed from its original name to the San Antonio Lumber & Tie Company. There was no variance between the allegation and proof, as claimed in the fifth ground of error.

[3] The sixth ground asserts error in rendering the judgment, as there was no ratification. If, as stated by Frisby in the evidence quoted above, he was requested by Hill to "secure funds from any bank or individual that I could make arrangements with," and "by the express consent given me by the other members thereof to act unrestricted in all matters pertaining to the interest of said company," we think sufficient authority to authorize the making of the note. A ratification was not necessary to fix liability where the authority to make the note was given in advance of its execution.

[4] There is no merit in the remaining assignment, claiming error in admitting the note as evidence on the ground that plaintiffs had denied the execution of it. The undisputed evidence of Frisby, quoted above, shows that he had express authority to execute the note.

We find no error in rendering the judgment, and the case is affirmed.